Duncan et ux. *v.* Gheen et al., Appellants.

Argued October 2, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*P. H. Fierro,* for appellants.

*Henry M. Hipple,* for appellees.

OPINION BY HIRT, J., January 21, 1958:

Plaintiffs are the owners of 28 acres of land in Crawford Township, Clinton County, and have occupied a frame dwelling on the premises, as their resi-

dence, since they acquired title in 1950. The defendant Carl E. Dunlap, is the record title holder of an adjoining 120 acres of land separated from plaintiffs' land only by a township road. He conveyed the tract to the defendants Carl Gheen and wife in 1954 by a deed which however has never been recorded. Harriet B. Foresman, plaintiffs' immediate predecessor in title acquired the right to the water from a certain spring, on defendants' land from Hattie Gheen who then owned the premises. The easement was created by deed dated June 28, 1926 and its purpose was to provide a source of 'sweet' water for domestic use by the owners of the dominant estate since all of the available water on the 28 acre tract was sulphurous. The instrument, in relevant respects, conveyed: "All the water from a certain spring of water, and also land surrounding the outlet of said water at south end of conduit situate north of public road, near the spring house of first party . . ." The covenants in the conveyance creating the easement run with the land and under the deed to the plaintiffs inured to their benefit. In accordance with the terms of the grant of the easement, plaintiffs' immediate predecessor in title constructed a catch basin or cistern on defendants' land to collect and store the water flowing from the spring. Water thence was conducted to the dwelling house on the grantees' land by means of a 2-inch pipe. The overflow from the cistern, if any, was reserved by the grantors of the easement for cooling purposes in their spring house.

In 1952 because of the burrowing of marmots the water was diverted underground from the original source of the spring and from the inlet of the pipeline through which it had flowed into the cistern. Plaintiffs, by the terms of the easement had acquired the right to enter upon the defendants' land to "keep in repair . . . the pipe or conduit through which the water

is conducted from said spring to said cistern or catch basin." The spring had resurfaced about 100 feet south of the original pool. And in the exercise of the above authority plaintiffs went upon the defendants' land and enlarged the passageway dug by the groundhogs and renewed the pipeline into the cistern from the spring where it had resurfaced. The location of this pipe, only partially buried was plainly indicated on the surface of the ground. In August 1955, the defendants under circumstances which charge them with wilful conduct, plowed up the pipe thus depriving plaintiffs of their only source of potable water. To make certain of that result the defendants also dug a drainage ditch, through which they diverted all of the water from the spring away from plaintiffs' pipeline and the cistern. In this action in equity the court granted permanent injunctive relief by restraining the defendants from interfering with the plaintiffs' right to the water from the spring in accordance with the easement which they had enjoyed under the terms of the grant. There is no merit in this the defendants' appeal from the final decree in this case.

The facts to which we have referred are reflected in the findings of the chancellor; they are supported by the evidence and were affirmed by the court in banc. They therefore have the effect of a jury's verdict and as such are binding on us in this appeal. The important consideration in this case is the fact that the spring from which the plaintiffs are getting their water supply under the court's decree is the identical spring covered by the grant. And it is of no moment that the outlet from which the water is now piped is 100 feet nearer the cistern than the place where the underground spring came to the surface at the time of the original grant. An easement created by a grant, as in this case, is in its nature and substance a covenant

running with the land. The terms of the grant therefore are to be construed in favor of the plaintiffs as owners of the dominant estate. The grant includes whatever is reasonably necessary to its enjoyment and the changes made by plaintiffs, which were necessary to stabilize the supply of water from the spring at its new location, and the new piping therefrom to the cistern did not affect the character of the easement, since the use of the easement continued to be confined strictly to the purpose for which it was created. *Ozehoski et al. v. Scranton Water Co.*, 157 Pa. Superior Ct. 437, 43 A. 2d 601; *Taylor et al. v. Heffner et al.*, 359 Pa. 157, 163, 58 A. 2d 450.

The case of *Pa. Water and Power Co. v. Reigart*, 127 Pa. Superior Ct. 600, 193 A. 311, on which appellants rely, presents an entirely different factual situation and has no application here.

Decree affirmed.